JAMES W. HOLLOWAY, Appellant, v. CHARLES F. SOUTHMAYD et al., as Trustees, etc., Respondents.

THE SAME, Appellant, v. FRANKLIN H. DELANO et al., as Trustees, etc., et al., Respondents.

THE SAME, Appellant, v. FRANKLIN H. DELANO et al., as Trustees, etc., et al., Respondents.

To exclude a grantee from the perpetual beneficial use of an open way in front of the premises granted, the language of the deed should clearly express such an intention.

Where the owner of land through which ran a public highway, the fee of the soil of which was in him, conveyed a portion of the land, by a description beginning on the side of the highway, thence by various courses to the highway, and thence to place of beginning, together with all the "easements, privileges, advantages and appurtenances belonging to or anywise appertaining" to the land, *held*, that while the fee of the soil of the road may not have been transferred by the deed, the grantor thereby impliedly warranted to the grantee that so much of the highway as bordered upon the premises granted should perpetually exist as an open way, and in legal effect granted such usual and necessary easements as would be comprehended in the free flow of light and air over the open way, and in the free use thereof as such *pro tanto;* and that the easements so granted survived the extinguishment of the public easement by discontinuance of the highway by act of law.

These private easements are independent of the public easement, and are in their nature as indestructible by acts of the public authorities, or of the grantor of the premises, as is the estate, the subject of the grant.

In an action of ejectment, plaintiff, as the successor in interest of the grantor in such a deed, sought to recover possession of the portion of the highway in front of defendant's premises, they having succeeded to the title and interest of the grantee; it appeared that that portion of the highway (the Bloomingdale road in the city of New York) had been legally closed, and so relieved of the public easement. *Held*, that conceding the grantor retained the right to the soil in the highway, plaintiff was entitled to judgment for the possession, subject, however, to the enjoyment perpetually of defendant's easements in and over the land.

*Wheeler* v. *Clark* (58 N. Y. 267); *Kings Co. Ins. Co.* v. *Stevens* (101 id. 411); *King* v. *Mayor, etc.* (102 id. 175); *Fearing* v. *Irwin* (55 id. 490); *Jackson* v. *Hathaway* (15 Johns. 447), distinguished.

Reported below, 64 Hun, 27, 34.

(Argued March 9, 1893; decided October 10, 1893.)

APPEALS from orders of the General Term of the Supreme Court in the first judicial department, made April 14, 1892,

each of which reversed a judgment in favor of plaintiff entered upon a verdict directed by the court and granted a new trial.

These were actions of ejectment.

The facts, so far as material in each case, are stated in the opinion therein.

*James A. Deering* for appellant. The plaintiff's ancestor, Charles Ward Apthorp, was the owner in fee of the land within the lines of the Bloomingdale road, subject only to the easement of the public in the same for public use as a highway. He retained the right to the reversion in full and unqualified dominion. (*In re Barclay*, 91 N. Y. 430; *People ex rel. Comrs.* v. *Banks*, 67 id. 568; *In re Lexington Ave.*, 29 Hun, 303; 92 N. Y. 629; *In re Woolsey*, 95 id. 135; *Jackson* v. *Hathaway*, 15 Johns. 453, 454; *People* v. *Kerr*, 27 N. Y. 196; *Van Amringe* v. *Barnett*, 8 Bosw. 357; *Williams* v. *N. Y. C. R. R. Co.*, 16 N. Y. 97–101; *Hooker* v. *Utica, etc.*, 12 Wend. 371; *Trustees, etc.*, v. *A. R. R. Co.*, 3 Hill, 567; *Pearsall* v. *Post*, 20 Wend. 131; *Barclay* v. *Howell*, 6 Pet. 498; *People* v. *Board of Westchester*, 4 Barb. 64; *Etz* v. *Daily*, 20 id. 32; *Kellsey* v. *King*, 33 How. Pr. 39; *Higgins* v. *Reynolds*, 31 N. Y. 151; *B. G. Co.* v. *Calkins*, 62 id. 386; *Fearing* v. *Irwin*, 55 id. 487; *Haberman* v. *Britt*, 128 id. 260; Lewis on Em. Domain, § 596; *Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 172; *Hymes* v. *Esty*, 133 id. 345.) The deed from Charles Apthorp to David M. Clarkson, dated October 15, 1799, did not convey the fee to any portion of the road. (*Mott* v. *Mott*, 68 N. Y. 246, 247; *People ex rel.* v. *Jones*, 112 id. 605; *Jones* v. *Cowman*, 2 Sandf. 238; *K. C. Ins. Co.* v. *Stevens*, 87 N. Y. 287; *Dexter* v. *R. & O. Mills*, 133 id. 684; *Sibley* v. *Holden*, 10 Pick. 249; *Smith* v. *Slocomb*, 9 Gray, 36; *Chadwick* v. *Davis*, 143 Mass. 7; *P. Co.* v. *Sadtler*, 63 Md. 533; *Church* v. *Stiles*, 10 Atl. Rep. 675; *Jackson* v. *Wendell*, 5 Wend. 146; *Wetmore* v. *Law*, 34 Barb. 515; *Van Amringe* v. *Barnett*, 8 Bosw. 367; *Anderson* v. *James*, 4 Robt. 35; *Sherman* v. *McKeon*, 38 N. Y. 266; *Wallace* v. *Fee*, 50 id. 694; *Fearing* v. *Irwin*, 4 Daly, 385; *People* v. *Colgate*, 67 N. Y. 512;

*In re Dept. of Parks,* 73 id. 560; *Augustine* v. *Britt,* 80 id. 647; 15 Hun, 395; *Mead* v. *Riley,* 18 J. & S. 20; *Hussner* v. *B. C. R. R. Co.,* 96 N. Y. 18; *Clark* v. *R.,* etc., *R. R. Co.,* 18 N. Y. S. R. 903; *De Peyster* v. *Mali,* 27 Hun, 430; 92 N. Y. 263; *Kellogg* v. *Ingersoll,* 2 Mass. 101; *Hubbard* v. *Norton,* 10 Conn. 422; *Haynes* v. *Young,* 36 Maine, 557; *Lamb* v. *Danforth,* 59 id. 322; *Kellogg* v. *Malin,* 50 Mo. 496; *Pritchard* v. *Atkinson,* 3 N. H. 335; *Butler* v. *Gale,* 27 Vt. 739; *Taylor* v. *Gilman,* 25 id. 411.) The plaintiff's fee title was not divested or affected by section 3 of the act of 1867, under which the road was closed. (*Williams* v. *N. Y. C. R. R. Co.,* 16 N. Y. 97; *Hooker* v. *Utica, etc.,* 12 Wend. 371; *Trustees, etc.,* v. *A. R. R. Co.,* 3 Hill, 567; *B. G. Co.* v. *Calkins,* 62 N. Y. 386; *Haberman* v. *Baker,* 128 id. 264; *Hymes* v. *Esty,* 133 id. 345; *City of Buffalo* v. *Pratt,* 131 id. 293; *In re Riverside Park,* 61 Barb. 63; *Jackson* v. *Hathaway,* 15 Johns. 449; *In re John & Cherry Streets,* 19 Wend. 659; *Augustine* v. *Britt,* 15 Hun, 395; 80 N. Y. 647; *De Peyster* v. *Mali,* 92 id. 262; Dillon on Mun. Corp. §§ 471, 538, 695; 1 Black. Comm. 60; 1 Kent's Comm. 462; Potter's Dwarris on Stat. 677; *Fearing* v. *Irwin,* 4 Daly, 394.) Upon the closing of the Bloomingdale road by the Central Park commissioners, under authority of chapter 697 of the Laws of 1867, all rights and interests therein in. the nature of easements ceased and were determined, and nothing survived to anybody except the ownership of the land forming the bed of the road. (*Fearing* v. *Irwin,* 55 N. Y. 486; *Utter* v. *Richmond,* 112 id. 610; *Coster* v. *Mayor,* etc., 43 id. 399; *K. Co. F. Ins. Co.* v. *Stevens,* 101 id. 411; *Wheeler* v. *Clark,* 58 id. 267; *King* v. *Mayor, etc.,* 102 id. 175; *Augustine* v. *Britt,* 15 Hun, 395; 80 N. Y. 647.) The deed from the children of Charles Ward Apthorp to David M. Clarkson dated October 15, 1799, did not convey any special or private easement in the road which detracted from their absolute right to the reversion in fee simple absolute, or which survived the legal closing of the road in 1868. (*Wheeler* v. *Clark,* 58 N. Y. 267; *K. Co. F. Ins. Co.* v. *Stevens,* 101 id.

411; *King* v. *Mayor, etc.*, 102 id. 175; *Darker* v. *Beck,* 32 N. Y. S. R. 193; *Fearing* v. *Irwin*, 55 N. Y. 487, 490; *Augustine* v. *Britt*, 15 Hun, 395; 80 N. Y. 647; *Underwood* v.*Stuyvesant*, 19 Johns. 185; *Lansing* v. *Smith*, 8 Cow. 166; 4 Wend. 9; *Canal Comrs.* v. *People*, 5 id. 462; *People* v. *Tibbetts*, 19 N. Y. 523, 527, 528; *People* v. *Canal Appraisers*, 33 id. 461; *People* v. *S. I. F. Co.*, 68 id. 71, 78; *Smith* v. *City of Rochester*, 92 id. 463, 485, 486; *Langdon* v. *Mayor, etc.*, 93 id. 129, 144; *Mayor* v. *Hart*, 95 id. 443, 450–452; *Dermott* v. *State*, 99 id. 101, 107; *McMurray* v. *City of Baltimore*, 54 Md. 104; *Dugan* v. *City of Baltimore*, 5 G. & J. 375; *Haight* v. *City of Keokuk*, 4 Iowa, 199; *Barney* v. *City of Keokuk*, 94 U. S. 324; *Rowan* v. *City of Portland*, 8 B. Mon. 700; *Barney* v. *City of Baltimore*, 1 Hughes C. C. 118; *Coffin* v. *City of Portland*, 11 Saw. C. C. 600; Dillon on Mun. Corp. § 634; Laws of 1799, chap. 70, pp. 733, 737; 4 Webst. Laws, 575, § 6; Laws of 1882, chap. 410, §§ 94, 955; Laws of 1807, chap. 115, § 1; Laws of 1867, chap. 697; *Green* v. *Hollis*, 86 N. Y. 245; *Coster* v. *Mayor, etc.*, 43 id. 399; *Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 id. 108.) Assuming that the owners of the land abutting upon the Bloomingdale road at the time it was closed by the commissioners of the Central Park in March, 1868, had acquired special easements for access, etc., therein, whether under the Apthorp deed or otherwise, these easements were lawfully extinguished, taken and discontinued before the defendants acquired title to the adjacent premises. (*Utter* v. *Richmond*, 112 N. Y. 610; *In re Barclay*, 91 id. 430; *Fearing* v. *Irwin*, 55 id. 487; 4 Daly, 386; *Underwood* v. *Stuyvesant*, 19 Johns. 181; *King* v. *Mayor, etc.*, 102 N. Y. 175; *Wheeler* v. *Clark*, 58 id. 267; *Coster* v. *Mayor, etc.*, 43 id. 399; *K. Co. F. Ins. Co.* v. *Stevens*, 101 id. 411; *Augustine* v. *Britt*, 15 Hun, 395; 80 N. Y. 647; *Brooklyn* v. *Armstrong*, 45 id. 234; *People ex rel.* v. *Asten*, 49 How. Pr. 405; 52 N. Y. 623; *People* v. *Tytler*, 64 id. 606; *Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 id. 108; *In re John & Anthony Streets*, 19 Wend. 659; *Sherman* v.

*McKeon*, 38 N. Y. 266; *In re Woolsey*, 95 id. 135.) The easement in the road, if any, appurtenant to the adjacent property, has been extinguished by abandonment. (Washb. on Ease. 541–548; *Crain* v. *Fox*, 16 Barb. 184; *Snell* v. *Levitt*, 110 N. Y. 595; *Woodruff* v. *Paddock*, 56 Hun, 288.) Assuming that the defendants have an easement in the premises in question the plaintiff, the owner of the fee, may maintain ejectment. (*White's Bank* v. *Nichols*, 64 N. Y. 60; *Goodtitle* v. *Alker*, 1 Burr, 133; *Jackson* v. *Hathaway*, 15 Johns. 447; *Wager* v. *T.*, *etc.*, *R. R. Co.*, 25 N. Y. 526; *Westlake* v. *Koch*, 29 N. Y. S. R. 283; *Etz* v. *Daily*, 20 Barb. 32; *Lozier* v. *N. Y. C. R. R. Co.*, 42 id. 465; Sedg. & Wait on Titles, § 130; *Carpenter* v. *O. & S. R. R. Co.*, 24 N. Y. 655.) The objection as to the form of the judgments first made by respondents upon the argument at General Term is without substance. (*Robinson* v. *Sherwin*, 36 Vt. 69; *Yancey* v. *Greenlee*, 90 N. C. 317; *Weese* v. *Barker*, 7 Col. 178; *Mahoney* v. *Van Winkle*, 21 Cal. 583; *Hart* v. *Robertson*, Id. 348; *Chandler* v. *Spear*, 22 Vt. 388; *Simmons* v. *Craig*, 137 N. Y. 550; *People* v. *Goff*, 52 id. 682; *Hackett* v. *Belden*, 47 id. 624; *Smith* v. *Rathbun*, 88 id. 660; *Holmes* v. *Seeley*, 17 Wend. 79; *Lavalette* v. *Wendt*, 75 N. Y. 579.) The decisions of the General Term in these cases are not entitled to the approval of this court. (*Mott* v. *Mott*, 68 N. Y. 256; *People, etc.*, v. *Jones*, 112 id. 605; *Jones* y. *Cowman*, 2 Sandf. 238; 1 R. S. [Edm. ed.] 689, § 140; *King* v. *Mayor*, 102 N. Y. 172; *Darker* v. *Beck*, 32 N. Y. S. R. 193; *Wheeler* v. *Clark*, 58 N. Y. 267.) The plaintiff's ancestor, Charles Ward Apthorp, and the latter's children and heirs at law did not convey the fee to any portion of the road. (*Jackson* v. *Hathaway*, 15 Johns. 457; *English* v. *Brennan*, 60 N. Y. 605; *White's Bank* v. *Nichols*, 64 id. 65; *K. Co. F. Ins. Co.* v. *Stevens*, 87 id. 287; 101 id. 411; *Lee* v. *Lee*, 27 Hun, 1; *Tag* v. *Kettletas*, 16 J. & S. 241; 92 N. Y. 625; *Dexter* v. *R. & O. Mills*, 39 N. Y. S. R. 933; 133 N. Y. 684; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 182; *Sibley* v. *Holden*, 10 Pick. 249; *Smith* v. *Slocomb*, 9 Gray, 36; *Chad-*

*wick* v. *Davis*, 143 Mass. 7; *P. Co.* v. *Sadtler*, 63 Md. 533;
*Church* v. *Stiles*, 10 Atl. Rep. 675; *Jones* v. *Cowman*, 2
Sandf. 233; *Wetmore* v. *Law*, 34 Barb. 515; *Van Amringe*
v. *Barnett*, 8 Bosw. 367; *Anderson* v. *James*, 4 Robt. 35;
*Sherman* v. *McKeon*, 38 N. Y. 266; *Wallace* v. *Fee*, 50 id.
694; *People* v. *Colgate*, 67 id. 512; *Mott* v. *Mott*, 68 id.
266; *In re Dept. of Parks*, 73 id. 560; *Augustine* v. *Britt*,
80 id. 647; 15 Hun, 395; *Mead* v. *Riley*, 18 J. & S. 20;
*Hussner* v. *B. C. R. R. Co.*, 96 N. Y. 18; *De Peyster*
v. *Mali*, 27 Hun, 430; 92 N. Y. 263; *Sizer* v. *Dev-
ereau*, 16 Barb. 161; *Child* v. *Starr*, 4 Hill, 369;
*Hamlin* v. *Paypoint Co.*, 141 Mass. 51; *Peters* v. *Carleton*,
124 N. Y. 637; *Whitbeck* v. *Cook*, 15 Johns. 483; *Huyck* v.
*Andrews*, 113 N. Y. 81; *Hyman* v. *Esty*, 116 id. 501; *Kel-
logg* v. *Ingersoll*, 2 Mass. 101; *Hubbard* v. *Norton*, 10 Conn.
422; *Haynes* v. *Young*, 36 Me. 557; *Lamb* v. *Danforth*, 59
id. 322; *Kellogg* v. *Malin*, 50 Mo. 496; *Pritchard* v. *Atkin-
son*, 3 N. H. 335; *Butler* v. *Gale*, 27 Vt. 739; *Taylor* v.
*Gilman*, 25 id. 411; *State* v. *McMinn*, 81 N. C. 585; *Hughes*
v. *P. & W. R. R. Co.*, 2 R. I. 508.) The deeds from the
children of Charles Ward Apthorth to Shaw and Jauncey did
not convey any special or private easement in the road which
detracted from their absolute right to the reversion in fee
simple absolute or which survived the legal closing the road
in 1868. (*Wheeler* v. *Clark*, 58 N. Y. 267; *K. Co. F. Ins.
Co.* v. *Stevens*, 101 id. 411; *Darker* v. *Beck*, 32 N. Y. S. R.
193; *King* v. *Mayor, etc.*, 102 N. Y. 175; *Fearing* v. *Irwin*,
55 id. 487; *Augustine* v. *Britt*, 15 Hun, 395; 80 N. Y. 647;
*Ogden* v. *Jennings*, 62 id. 531; *Coster* v. *Mayor*, 43 id. 399;
*Griffiths* v. *Morrison*, 106 id. 166; *Egerer* v. *N. Y. C. &
H. R. R. R. Co.*, 130 id. 108.) Assuming that the deeds
from Apthorp to Shaw and Jauncey conveyed a special ease-
ment in the road, and that the owners of the land abutting
upon the Bloomingdale road at the time it was closed by the
commissioners of the Central Park in March, 1868, had special
easements for access, etc., therein, whether under the Apthorp
deed or otherwise, these easements have been lawfully extin-

guished, taken and discontinued. (Laws of 1867, chap. 697, §§ 1, 2, 3 ; *Fearing* v. *Irwin*, 55 N. Y. 487; *Utter* v. *Richmond*, 112 id. 610; *People ex rel.* v. *Asten*, 6 Daly, 18; 62 N. Y. 623 ; *In re Barclay*, 91 id. 430.) The deed from Charles Apthrop and others to Oliver Vanderbilt, dated February 28, 1800, and the deed from Charles Apthorp to Mary and William Jauncey, dated August 1, 1799, did not convey the fee to any portion of the road. (*Dunford* v. *Weaver*, 84 N. Y. 445 ; *Jackson* v. *Hathaway*, 15 Johns. 447 ; *English* v. *Brennan*, 60 N. Y. 605 ; *White's Bank* v. *Nichols*, 64 id. 65 ; *K. Co. F. Ins. Co.* v. *Stevens*, 87 id. 287; 101 id. 411; *Lee* v. *Lee*, 27 Hun, 1; *Tag* v. *Kettletas*, 16 J. & S. 241; 92 N. Y. 625 ; *Dexter* v. *R. & O. Mills*, 133 id. 684; *Jones* v. *Cowman*, 2 Sandf. 233 ; *Wetmore* v. *Law*, 34 Barb. 515 ; *Van Amringe* v. *Barnett*, 8 Bosw. 367 ; *Anderson* v. *James*, 4 Robt. 266 ; *Wallace* v. *Fee*, 50 N. Y. 694 ; *Fearing* v. *Irwin*, 4 Daly, 385 ; *People* v. *Colgate*, 67 N. Y. 512 ; *Mott* v. *Mott*, 68 id. 246 ; *In re Dept. of Parks*, 73 id. 560 ; *Augustine* v. *Britt*, 80 id. 647 ; *Mead* v. *Riley*, 18 J. & S. 20 ; *Hussner* v. *Brooklyn*, 96 N. Y. 18; *Clark* v. *City of Rochester*, 18 N. Y. S. R. 903 ; *DePeyster* v. *Mali*, 27 Hun, 460.) The deeds from the children of Charles Ward Apthorp to Vanderbilt and Jauncey did not convey any special or private easement in the road which detracted from their absolute right to the reversion in fee simple absolute, or which survived the legal closing of the road in 1868. ( *Wheeler* v. *Clark*, 58 N. Y. 267 ; *K. Co. F. Ins. Co.* v. *Stevens*, 101 id. 411; *Darker* v. *Beck*, 32 N. Y. S. R. 193 ; *King* v. *Mayor, etc.*, 102 N. Y. 175, 462; *Fearing* v. *Irwin*, 55 id. 487 ; *Augustine* v. *Britt*, 15 Hun, 395 ; 80 N. Y. 647 ; *Utter* v. *Richmond*, 112 id. 610 ; *Ogden* v. *Jennings*, 62 id. 531; *Coster* v. *Mayor, etc.*, 43 id. 399 ; *Griffiths* v. *Morrison*, 106 id. 166 ; *Egerer* v. *N. Y. C. & H. R. R. R. Co.*, 130 id. 108.)

*William G. Choate* for respondents in each case. In all the deeds from the Apthorp heirs, the construction of which is brought in question in these actions, excepting the deed of

February 28, 1800, to Oliver Vanderbilt (which affects here only so much of the land claimed in Delano action No. 2 as was embraced in the westerly half of the old road), the descriptions of the granted premises run along the road and not along the side of the road. Such words of description, in the boundaries given by a deed, mean, *prima facie*, a boundary on the center line of the road, and in legal effect carry the grant to such center line, unless controlled and varied by sufficient evidence of contrary intent. (*Herring* v. *Fisher*, 1 Sandf. 344; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 64; *Child* v. *Starr*, 4 Hill, 269; *Mott* v. *Mott*, 68 N. Y. 246; *City of Boston* v. *Robinson*, 13 Allen, 146; *Seneca Nation* v. *Knight*, 23 N. Y. 498; 3 Kent's Comm. 432.) The three deeds in question here, viz., those to William and Mary Jauncey, to John Shaw and to David M. Clarkson, convey to the grantees the title to the soil of the adjoining road to its center line. (*In re Ladue*, 118 N. Y. 213; *Haberman* v. *Baker*, 128 id. 253; *Mott* v. *Mott*, 68 id. 246; Angell on Highways, § 313; 3 Kent's Comm. 432; *Willoughby* v. *Jenks*, 20 Wend. 96; *Gidney* v. *Earl*, 12 id. 98; *Cook* v. *Green*, 11 Price, 736–739; *In re John & Cherry Streets*, 19 Wend. 659.) But in any and every instance or instances (if any there shall prove to be) in which it shall be held that the defendants have not title to the fee of the roadway, in virtue of the grant from the Apthorp heirs to their predecessors in title, the defendants have such title as abutting owners by virtue of the act of April 24, 1867, under which such closing of the Bloomingdale road as there has been, took place. (*Livingston* v. *Mayor, etc.*, 8 Wend. 85.) But in so far as it shall be adjudged that the defendants do not own the bed of the road, they certainly have a private easement therein for light and air and access, which has not been, and cannot be, taken from them by any proceedings under the act of 1867. (*White's Bank* v. *Nichols*, 64 N. Y. 73; *De Peyster* v. *Mali*, 92 id. 267.) There is no just foundation for the distinction upon which, alone, the judge at the trial rejected the defendants' claim of a subsisting easement in their favor over the lands in con-

troversy, viz., that the legal rule (well established, and which. the judge fully recognized), that a conveyance of lands bounded upon a road or street, the title to the soil of which is held by the grantor, and by the terms of description in the conveyance remains in him, vests in the grantee a perpetual private easement over such adjoining land in the road belonging to the grantor, is confined to conveyances bounded upon a road or street laid down upon a map made by the grantor, or otherwise recognized by him as intended for a road or street *in futuro*, and has no application to conveyances bounded upon a road or street already existing as a highway and subject to the public right of passage. (*White's Bank* v. *Nichols*, 64 N. Y. 65; *Parker* v. *Smith*, 17 Mass. 413; *Parker* v. *Framingham*, 8 Metc. 260; *Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Fox* v. *U. S. R. Co.*, 109 Mass. 292; *In re Eleventh Ave.*, 81 N. Y. 436; *De Peyster* v. *Mali*, 92 id. 262; *Langdon* v. *Mayor*, *etc.*, 93 id. 129.) If such private easement as we claim were thus vested in the defendants, or in their predecessors in title, it has not, as matter of fact, been taken or undertaken to be taken from them by any proceedings under the act of 1867. (*King* v. *Mayor, etc.*, 102 N. Y. 175.) But if the act of 1867 had in terms professed to deal with and destroy the defendant's private easements above referred to, it would be void and ineffectual for that purpose, because it would amount to taking private property for a use which was not, and could not be a public use. (*Story* v. *E. R. R. Co.*, 90 N. Y. 122.) Plaintiff's objections to our claim of these easements by reason of certain local statutes relating to the city of New York, and by reason of the provisions of the Revised Statutes relating to implied covenants in deeds, has no foundation. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 120; *Parker* v. *Framingham*, 8 Metc. 267; *De Peyster* v. *Mali*, 92 N. Y. 262.) Defendant's easements are not affected by the opening of other streets. (*White's Bank Case*, 64 N. Y. 316.)

The following is the opinion and decision in the case first above entitled :

GRAY, J.   The land, possession of which is claimed, comprises what was formerly the westerly half of the Bloomingdale road, between Ninety-fifth and Ninety-sixth streets in the city of New York.   Originally it bounded a parcel of land which was conveyed by Charles Apthorp and others to David M. Clarkson, by deed, with full covenants, dated October 15, 1799, by this description of the premises, viz.:

"All that certain tract or parcel of land situate at Bloomingdale in the seventh ward of said city of New York, and butted and bounded as follows, to wit : Beginning on the north side of the Bloomingdale road at the corner of the lane leading down to Mr. Striker, and running along the same (the lane leading to Striker), north fifty-eight (58) degrees west ten (10) chains sixty (60) links, and thence by various courses to the Bloomingdale road ; thence along the said road north twenty-eight (28) degrees thirty (30) minutes thirty-nine (39) chains and seventy-five (75) links to the place of beginning, containing · ten (10) acres 'according to a map thereto annexed.' "

The grantors included in their grant all the easements, privileges, advantages and appurtenances belonging or in anywise appertaining to the land.   The Bloomingdale road was opened as a public highway in 1707, by the public authorities, over the land of Theunis Ides.   On March 8, 1868, the commissioners of the Central Park, acting under the authority of an act of the legislature, passed April 24, 1867, filed a map re-laying out a district comprehended within Fifty-ninth and One Hundred and Fifty-fifth streets, the Eighth avenue and the Hudson river.   Upon this map Bloomingdale road north of Eighty-sixth street was not retained, and its legal closing as a highway dates from the filing of that map.

By mesne conveyances the tract of land, of which the premises in question formed a portion, came into the possession and ownership of Charles Ward Apthorp, who died intestate in 1797.   His heirs made various conveyances of the lands ; one of which was to Clarkson.   The plaintiff is a

descendant of James Apthorp, one of the children of Charles W. Apthorp, and it is his claim that, by inheritance, he is entitled to and seized in fee of an undivided one-twenty-eighth part of the land formerly within the lines of the Blooming-dale road and lying in front of the premises conveyed to Clarkson. That claim rests upon the ground that that con-veyance did not take in the road, and, therefore, when, by its legal closing in 1868, it was relieved of the public easement, it reverted "in full and unqualified dominion" to the heirs of Charles W. Apthorp.

It is argued for the defendants, who have become vested with their rights and titles in the premises through mesne conveyances by successive grantees of the land, since the grant to Clarkson by Apthorp's heirs, that that grant included the Bloomingdale road to its center line; or, if that was not its effect, that, by virtue of the provisions of the act of 1867 for the closing of that road, the defendants acquired the fee of the road to its center; or, if the fee in the soil of the adjoin-ing portion of the road never passed from the original grantors, that their grantee, his heirs and assigns, became vested with private easements in the road for light, air and access, to the purposes of which the ownership of the plain-tiff should be declared perpetually subject.

Whatever the individual opinions we might entertain (and they may well differ), respecting the effect of the language in the conveyance to Clarkson to convey to him the fee of the soil to the center line of the Bloomingdale road, we prefer to place our decision upon the broad ground that Clarkson became vested with rights to private easements in the highway; which would perpetually exist as against the grantors and those deriving title from them; although the public easement in the road should become extinguished by its discontinuance as a public highway. There is great difficulty in reconciling the decisions in this state upon the question of when a description in a deed, which bounds the premises upon a highway, or street, shall be deemed to take in the fee to the center line of the roadbed in front of the premises. There is no doubt

about the rule being settled that there is a legal presumption against the grantor's intending to reserve to himself the title to the soil of the highway, and that such presumption is only overcome by language in the conveyance clearly indicating such an intention on his part; but the application of the rule is made uncertain, through the varying opinions of courts, as to the inference which we shall draw as to intention from the words in which the grant is couched.

Sufficient evidence of that uncertainty of application will be found from reading the opinions, since the early case of *Jackson* v. *Hathaway* (15 Johns. 447), down to a very recent date.

In the very elaborate briefs, which are submitted, the cases have been diligently investigated and collated on both sides, and, by reference to them, it can be seen that there has been more or less divergence in views with respect to how boundary lines are to be drawn, with respect to monuments in the highway and in streams; as, also, with respect to what shall be deemed descriptive monuments.

In the absence of language, which will plainly express the intention of a grantor to exclude from the operation of his grant the soil of the adjacent highway, it is just that doubts should be resolved in favor of his grantee; but in the application of the principle, there may be some danger to the stability of property rules.

In a case apparently governed by precedents, slight departures from the descriptive language used in the earlier cases might be seized hold of to prevent what seems an unjust result. In the present case, for instance, there were found grounds for distinguishing the description in the grant from that used in *White's Bank* v. *Nichols* (64 N. Y. 65), and *Kings Co. Ins. Co.* v. *Stevens* (87 id. 287), and in some later cases, and they are pointed out in the briefs of counsel and in the opinions delivered by Mr. Justice INGRAHAM at the General Term, in this case, and in that of the same plaintiff against Delano.

The distinction may be justified by the conviction that such

a claim as the plaintiff makes is unmeritorious; but there is considerable doubt in our minds whether the case is not within the precedents just cited. However that may be, we think that the question can be effectually set at rest; the appearance of shaking the stability of decisions can be avoided and a property rule established, not only just, but which is logically deducible from legal principles, by holding that, in this and like cases, while the grantor may have retained the fee of the soil in the highway, he has but a naked, or barren title, and that, in the event of the discontinuance of the public highway by act of law, the grantee, and his successors in interest, nevertheless, will still be entitled to the perpetual enjoyment of certain easements, which were impliedly granted, in relation to the open way lying in front of the lands granted, and referred to as their boundary. This view is in accord with authority and with reason. That private easements may be appurtenant to the property abutting upon a public highway must be conceded. These easements of the abutting landowner are in addition to such as he possesses as one of the public, to whose use the property has been subjected. They are independent of the public easement and, whether arising through express or implied grant, are as indestructible, in their nature, by the acts of the public authorities, or of the grantor of the premises, as is the estate, which is the subject of the grant.

The case of *White's Bank* v. *Nichols*, (64 N. Y. 65), is instructive upon this proposition. That was in ejectment, to recover a strip of land which, by construction of a street under the direction of the public authorities, remained between the new and original street lines. The defendant was the owner of the abutting property and took possession up to the new street line, and the plaintiff, claiming as the owner of the soil of the street, sought to eject him. It was held that, by the original grant of the lot to defendant's predecessor in the title, its boundary was confined to the exterior line of the street; but that he had the right to an easement, of which he could not be deprived, and which consisted in the

right to have the space of ground left open forever as a street, and to use the way for every purpose that may be usual and reasonable for the accommodation of the granted premises. The plaintiff's recovery, therefore, in the action, it will be seen, was a barren one; for, though it obtained a judgment that the fee was in it, the judgment subjected it to the defendant's easement. In that case, the original grant was of premises as shown upon a map of the block, made by the grantors, on which streets were designated, and, while that circumstance entered into the decision of the question of defendant's right to an easement, nevertheless, it was laid down by ALLEN, J., as the general rule, that "when land is granted bounded on a street or highway, there is an implied covenant that there is such a way, that so far as the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns, shall have the benefit of it." In *Parker* v. *Framingham* (8 Metc. 260), which was cited by Judge ALLEN in support of his statement of the rule, Chief Justice SHAW, who delivered the opinion, after stating the settled rule in the language quoted by Judge ALLEN, continued: "It seems reasonable, and quite within the principle of equity on which this rule is founded, to apply it to the discontinuance of a highway, so that, if a man should grant land bounding expressly on the side of a highway, if the grantor own the soil under the highway, and the highway, by competent authority, should be discontinued, such grantor could not so use the soil of the highway as to defeat his grantor's right of way, or render it substantially less beneficial. Whether this should be deemed to operate as an implied grant or as an implied warranty covenant and estoppel, binding on the grantor and his heirs, is immaterial. The right itself would be inferred from that great principle of construction, that every grant and covenant shall be so construed as to secure to the grantee the benefits intended to be conferred by the grant, and that the grantor shall do nothing to defeat, or essentially impair his grant."

The question involved in that case related to a claim for damages, upon laying out a town way over land formerly

·embraced within the limits of a turnpike, which had been discontinued; but the statement of the general rule was relevant to the discussion, to show that an easement was secured to the petitioners, as against the grantor and his assigns, over the soil of the turnpike after it was discontinued.

Professor Washburn, in his work on Easements (*170), says "upon the authority of *Parker* v. *Framingham* (*supra*), where one sells land bounded upon the highway, and the same is discontinued by act of law, although the same reverts to the owner of the fee of the soil, the grantor, as such, in such a case, would have no right to deprive his grantee of the right to use the discontinued road for the purpose of a way."

The Bloomingdale road, it must be remembered, was laid out by the authorities as a public highway over a tract of land owned by Ides, the predecessor in title of the Apthorps. The effect was to burden their land with an easement of way in favor of the public. As the title to the land in the road remained in them, we think that to bound a parcel of land ·upon the highway, under conveyances which included all the appurtenant easements and advantages, was to grant easements in the land embraced in the way in favor of their grantees, to the extent that they might be beneficial to the estate conveyed. Although the fee of the soil remained in the grantors, it was incumbered with an easement of their own ·creation. (Washburn on Easements [4th ed.], 266.) In the text book cited, the proposition is rested upon the authority of the case of the *Opening of Eleventh Avenue* (81 N. Y. 436).

The fact in that case was that the owner of the tract made ·conveyances of portions, bounding them upon intended streets not yet laid out by legal authority, but treating them as located if the map of the public authorities had been extended. The decision of the referee was upheld, as being supported by the ·authorities, that these conveyances, although not amounting to ·a dedication of the lands embraced in the supposed streets to the use of the public, or constituting them public highways, ·created an easement in favor of the grantees of the lots abutting thereon; which as between them and their grantor, and

those deriving title under him, entitled them to have the lands described in the conveyances as streets and avenues left open, as such for the benefit of their lots.

Is there any satisfactory reason for making a distinction, against an application of this rule to a case where the conveyance bounds the premises upon an existing public highway, which has been laid out over the lands of the grantor, or of his predecessor in title, and the fee in the soil of which, remained in him with reversionary rights? The argument against it is that to refer to a public highway as a boundary is, merely descriptive; but it seems a sufficient answer to that to say that to bound the grant by the way, the fee of the soil of which is in the grantor, is to warrant its presence and its continuance not as a highway, but as an open way for access or enjoyment, so far as the grantor is concerned, in the absence of words reserving and denying all rights in the highway.

In *DePeyster* v. *Mali* (92 N. Y. 267), the existence of such an independent private easement of the abutting landowner was distinctly recognized. It is said to be impliedly granted, because necessary for the enjoyment of that which is expressly granted, and upon the principle that where one grants to another, he thereby grants him the means of enjoying it, whether expressed or not. In that principle easements of access and of light and air find their support. (2 Washb. Real Prop. 25, 27.)

The easement which the public acquires in the land, upon the laying out of the highway, is limited to those uses for which highways have ordinarily been understood to be intended; but the abutting landowner, besides his right as one of the public, may acquire a right to private easements, even if he never owned the fee of the soil in the highway. If a use of the street, or highway, for public, or *quasi* public, purposes, has been authorized, which is extraordinary in its nature, and interferes with a free access, or the free flow of light and air to the abutting owner's premises, *pro tanto*, he is deemed to have suffered in the enjoyment of property rights. As to him, such a use is illegal and will be restrained, until.

the right to the particular use is acquired by making compensation through agrèement, or through condemnation proceedings, under the law of eminent domain. This is the doctrine of the elevated railroad cases, and their litigation well illustrates what rights are possessed by the abutting lot owner on the public street to the enjoyment of those advantages, which the open way in front of his premises confers upon his property. If, by act of law, the public right, or easement in the highway, has ceased ; there is no reason for saying that, as against the grantor of the abutting land, any right to the continuance of private easements has been lost to the grantee. At least, the principal argument for the other view is that the possible discontinuance of the highway was a contingency which the parties must, or should, have considered. But is that quite just ? Had the grantee not the right to assume that, with the fee of the highway in the grantor, in conveying lands with boundaries given upon the highway, together with all the appurtenances, easements, advantages and privileges, he intended to and did, impliedly, if not in express terms, warrant to his grantee, as far as he was concerned, the continuance of the open space in front of the land, for all the beneficial purposes which it could subserve, even if the public easement should cease ? When it is said that the land of a highway, which has been discontinued, reverts to primary conditions of ownership, obviously, it is to be understood that such ownership is not thereby relieved of burdens created by the original owner.

At the time of the sale of the land to Clarkson, the open way, by which the grantor bounded it, existed as the visible incident to the enjoyment of the land ; upon what principle may the grantor, or his successors in interest, when the public highway is discontinued by the action of the public authorities, step in and claim that a right to the exclusive possession and dominion of the land embraced in the highway had reverted ? The appurtenances in such a grant, which relate to the highway and its uses, are not limited to those which appertain to the general public. That would hardly be contended for.

Why then, the way having ceased to be a public one, should a reversion of ownership, by operation of law, be deemed to free it from a private easement appurtenant to the abutting land? In the sale of a parcel of land, which is described as bordering upon a highway, we may presume that its existence entered as a factor into the consideration for the purchase, as offering certain advantages; such as would include a free flow of light and air over it, as well as in the freedom of access. Though such private easements have been said to result from implied covenants, in legal effect, the covenant operates as a grant, which warrants, as against the grantor, his heirs and assigns, their perpetual enjoyment by the grantee and his successors in interest. The highway, as such, may be discontinued, but so far as the grantor and his successors in interest are concerned, they shall not derogate from the original grant and, by resuming possession of the soil, prevent the enjoyment by the abutter of his private easement.

As is suggested by the counsel for the respondents, as to the grantee, it is only upon the cessation of the public right in the road that the practical enjoyment of the private easement, as such, begins. If the fee in the land, upon which the highway exists, has remained in the grantor, its usefulness, if any, to him must be confined to subsoil properties and uses, which do not interfere with the full enjoyment of the private easements over the land.

It is the better rule to hold that, to exclude a grantee from the perpetual beneficial use of the open way in front of the premises granted to him, the language of the deed should clearly express such an intention. Mr. Justice STORY, in *United States* v. *Appleton* (1 Sumner, 492–502), observed that "in truth every grant of a thing naturally and necessarily imports a grant of it as it actually exists, unless the contrary is provided for."

It was said by STRONG, J., in *Huttemeier* v. *Albro* (18 N. Y. 48), that whether a right of way, or other easement, is embraced in a deed, is always a question of construction of the deed, having reference to its terms and the practical incidents

belonging to the grantor of the land at the time of the convey-
ance. In that case, in the deed of a lot, a boundary was
" south-easterly along said alley way," and that reference to
the alley was considered as a circumstance indicative of an
intention that the way should continue and that the easement
was conveyed to the grantee as an appurtenance.

Some cases are referred to by the counsel for the appellants,
as being opposed to the view expressed. In *Wheeler* v. *Clark*
(58 N. Y. 267), the question involved was, whether a clause
contained in a certain deed of lots, upon a map of the grantor's
lands, which subjected the land forming the streets in front of
the lots to the use of all the owners of the lots upon the map,
and of the public generally, as public streets, could be con-
strued as perpetually reserving a private right of way over
the land of the highway, and the decision was that no private
right of way was created, which plaintiff, as the owner of one
lot, could enforce as against the defendant, who was the owner
of other lots, and whose title (like that of the other lot own-
ers), upon the discontinuance of the public highway, under
his grant, carried him to the centre of the highway.

The question now before us is quite other than in *Wheeler* v.
*Clark*, or in *Kings Co. Ins. Co.* v. *Stevens* (101 N. Y. 411).
In the latter case the defendant, under implied covenant,
claimed to have a right of way over a road, which had been
closed by the public authorities, and plaintiff's action was to
restrain her from entering upon the strip of land in front of
its premises. The question did not relate to the rights of
the abutter in the road in front of her premises ; but to a dis-
tant way. FINCH, J., observed, in his opinion, that " the
closing of the street in controversy is in front of the plaintiff's
premises and not of her's (the defendant's) and does not take
from her light, air or convenience of access." In *King* v. *The
Mayor* (102 N. Y. 175), the dispute was with respect to the
right to an award of damages for closing Bloomingdale road as
a public highway. After the road was legally closed, by the
filing of the map in 1868, but before the making of the award
of damages, the owners of the land fronting upon the road

conveyed to Brennan, by a description which bounded the grant by the Bloomingdale road and which included the right, etc., of the grantors in that road and in other streets as were adjacent to the premises described. The decision was to the effect that the representatives of the Kings, who were the grantors, and not Brennan, were entitled to the award ; upon the ground that the right to the damages vested at the time of the filing of the map, which legally closed the Bloomingdale road, and that the deed to Brennan had not transferred to him the personal claim to the damages. The remarks of Judge FINCH, cited by appellant's counsel, must be read in view of the proposition decided. He held that Brennan was bound to know, when the grant was made to him, that the public highway no longer existed and that he must be presumed to have bought in view of that fact. With such knowledge, chargeable to Brennan, he could not be heard to claim that, by bounding the grant upon the highway, his grantors had conveyed any easement in the highway. (And see *Utter* v. *Richmond*, 112 N. Y. 610.)

These cases, which the appellant's counsel have cited from the reports of this court, are the only ones we need discuss. In *Fearing* v. *Irwin* (55 N. Y. 490), also cited, the question was as to when the Bloomingdale road was closed, and the decision related to the constitutionality of the legislative acts and their effect. In other respects, it rested upon a formal admission of record. It is not in point here. The very early case of *Jackson* v. *Hathaway*, (15 Johns. 447), cannot be regarded as an authority upon the question now under discussion ; for the reason that we are not sufficiently informed as to the terms of the conveyance of the land. Nor should we consider ourselves bound by that case, which concerned the ownership of the fee in the highway, as affected by a conveyance of adjoining land, in the decision of this case. As a precedent in the consideration of the question of when the fee of the land in the road passes to a grantee of premises upon it, under the terms of a description, we are not disposed to

·dispute its authority; but, we think, it should not be ·extended.

The appellant further contends that these special easements, if .acquired by the abutting owner, were lawfully extinguished .and condemned, as the result of the proceedings had under the act of 1867; providing for the closing of the Bloomingdale road. In that he is mistaken. The purpose and the effect of that act, it is plain from its language, were to discontinue the road as a public highway and, in so ·doing, to extinguish the public easement. The legislature was not concerned with private easements and rights in the land covered by the public highway. Its action left these private interests as they were; the public had no interest in their destruction. The award of damages was to ·compensate property owners who could prove they had been injured by the discontinuance of a public highway. It is ·obvious that the presence of a public highway in front of one's premises, by reason of the many public and general advantages it offers, confers a distinct value upon them and that its proposed discontinuance may result in a diminished value to the ·owner. The *situs* of a parcel of land enters into the estimate of its value. If upon a public and prominent thoroughfare, it has a value which it would not possess if the thoroughfare were closed or changed. How great the loss in value is, or if any is in fact sustained, may turn upon a consideration of the circumstances surrounding the proposed alteration; but the legislature, in providing for awards of damages, looks at the general fact of a change being made, which may affect injuriously landowners, and authorizes compensation in such cases.

The result of our consideration of this plaintiff's demand for the possession of the premises described, of the basis for such :a claim and of the intention to be deduced from the original ·deed of Apthorp's heirs, from its terms and the circumstances of its making, is, that we hold that though the fee of the soil ·of the road may not have been transferred to the grantee by ·the conveyance and may have remained in the grantors, and

those deriving title from them; yet, in bounding the granted premises upon the Bloomingdale road and by including the easements and appurtenances thereto belonging, the grantors, impliedly warranted to the grantee that so much of the road should perpetually exist as an open way as bordered upon the premises granted and, in legal effect, granted such usual and more or less necessary easements as would be comprehended in the free flow of light and air over and in the free use of the open way as such, *pro tanto*, and which survived the extinguishment of the public easement in the highway by act of law. To those easements the fee in the land embraced in the highway remained perpetually subject. That the ownership of the fee may be barren of profit has nothing to do with the question. In the original sale the owner received, presumably, a value proportioned to the fact that the land sold was upon the Bloomingdale road, which gave to it access and other advantages. To permit the successors in interest of the original grantor, in the face of the grant, to resume dominion over, and to have the beneficial use of the land in the old highway, would be unjust, as well as without sufficient warrant in the law.

It follows from the views we entertain upon the questions discussed, that, while the plaintiff was entitled to maintain the action and to have judgment adjudging him entitled to recover the fee of the land in dispute, it was error to award judgment for the unqualified possession of the land. He was not entitled to such a judgment against the defendants, but only to a judgment for the possession subject perpetually to the defendants' right to the enjoyment of their easement in and over the land.

For the reasons stated, the order appealed from should be affirmed and, under the stipulation of the appellant, judgment absolute should be ordered against him with costs.

MAYNARD, J. I am in favor of affirmance in the *Southmayd* case, and in *Delano No.* 1, because the defendant is the owner of the fee of the land to the center of the Bloomingdale road,

upon which his premises are bounded.   Unless there is something in the description of the property conveyed, or its location or relation to other property of the grantor, indicative of a contrary intent, a grant of land bounded upon a public street or highway of which the grantor has the fee, must be deemed to convey the fee to the center of the street or highway.

The same rule of construction should be applied where the boundary is along the street or highway and the intersecting lines are described as running to the street or highway.   But if it must be conceded that the grant does not convey the fee of the street, I concur in the opinion of GRAY, J.

ANDREWS, Ch. J., and PECKHAM J., concur with GRAY, J.
EARL, FINCH and O'BRIEN, JJ., dissent.
Orders affirmed and judgment accordingly.

The following is the opinion and decision in the case second above entitled :

GRAY, J.   In this action, the claim of the plaintiff to recover the possession of land formerly embraced in the Bloomingdale road, and between Ninetieth and Ninety-first streets, in the city of New York, depends upon the construction to be given to the descriptive words in two grants of land ; one made by Charles' Apthorp and others to John Shaw and the other made by the same grantors to William and Mary Jauncey, in 1799.

In the deed to Shaw, they were the following, viz. : " Beginning at the corner of William Constable's land on the north side of the Bloomingdale road, and running thence along said road thirty-eight degrees east, eight chains forty-five links ; thence along the south side of a private road in the map hereunto annexed delineated, and forty links wide and north fifty-two degrees west, twenty-two chains ten links, crossing the said private road to the North river ; thence southwesterly along the side of the said river to the said William Constable's boundary line, and thence along said boundary line south fifty-three degrees east, twenty-four chains fifty links to the place of beginning, containing nineteen acres three roods and

five perches, according to a map hereunto annexed and made by Benjamin Taylor."

In the deed to the Jaunceys, they are as follows, viz.: "Beginning at the corner of a field at the junction of the Bloomingdale road with the crossroad that leads to Harlem; thence running along the Bloomingdale road south thirty-five degrees west, seven chains fifty links; thence south thirty-seven degrees west, ten chains and thirty-two links, thence south fifty-four degrees east along William Constable's and Richard L. Brown's land nineteen chains eighteen links; thence north fifty-four degrees east nine chains fifty-five links; thence south fifty-three degrees east three chains seventeen links; thence north thirty-six degrees east eight chains ninety-two links; thence north fifty-three degrees west thirty-six chains, to the beginning, containing forty-two acres and five perches, according to a map thereof made by Benjamin Taylor, one of the city surveyors of the said city of New York and hereunto annexed."

The General Term were of the opinion that no doubt existed in this case, whatever it may have been in *Holloway* v. *Southmayd;* but that, by the description, the grantees took the fee of the Bloomingdale road to its center line. While we concede that, under these descriptions, the doubt, as to what was the intention of the grantors to convey, might be more readily resolved in favor of the grantees; nevertheless, we prefer to place our affirmance of the General Term's judgment upon the grounds stated in the opinion in *Holloway* v. *Southmayd,* decided herewith.

In either case, we are inclined to the view that the descriptive monuments, or starting points, for the boundary lines cannot be fixed in the centre of the Bloomingdale road, without straining too much the language used. In Shaw's deed "the corner of Constable's land on the north side of the Bloomingdale road" seems to indicate the side of the road. If we read "on the north side," etc., as referring to the general *situs* of Constable's land, we should have to assume that Constable owned to the centre of the road; which the proofs do

not warrant us in doing. While, if we read these words as
referring to the "corner," then, of course, we should have the
same condition of things as in the *Southmayd* case. So, in
the Jaunceys' deed, "the corner of the field at the junction of
the Bloomingdale road," etc., are words which, when read
according to their natural import, seem to describe the *situs*
of the field and fix the starting point for the boundary line in
the exterior line or side of the road bounding the field and not
within the road itself.

For the reasons expressed in the case of this same plaintiff
against Southmayd and others, the order appealed from should
be affirmed and, under the stipulation, judgment absolute should
be ordered against the appellant, with costs.

All concur; MAYNARD, J., for reasons stated in memo-
randa in *Southmayd* case; except EARL, FINCH and O'BRIEN,
JJ., dissenting.

Order affirmed and judgment accordingly.

The following is the opinion and decision in the case third
above entitled:

GRAY, J. In this case, the claim of the plaintiff to recover
the possession of land formerly embraced in the Bloomingdale
road, and between Ninety-second and Ninety-third streets, in
the city of New York, depends upon the construction to be
given to the descriptive words in two grants of land; one
made by Charles Apthorp and others to Oliver Vanderbilt,
in 1799, and the other made by the same grantors to William
and Mary Jauncey in 1800.

In the deed to Vanderbilt, the description is as follows, viz.:
"Beginning at a corner on the westerly side of the Blooming-
dale road at the northern side of the private road leading to
Hudson's river, and running thence along the west side of
Bloomingdale road aforesaid north thirty-five degrees east
three chains sixty links; thence along the same north thirty-
two degrees east, five chains forty-two links to a lane on the
south side of Mr. Clarkson's land; thence north thirty-five
degrees west twenty-three chains forty links to the Hudson's

river ; thence southwesterly along the said course eight chains fifty links to the land sold to Mr. Shaw ; thence south fifty-three degrees east one chain thirty links to the private road leading to the Hudson's river ; thence along the same north thirty-five degrees east forty links, being the width of said road ; thence south fifty-three degrees east twenty chains seventy-three links to the place of beginning, containing nineteen acres, one rood, fifteen poles, according to a map annexed."

In the Jaunceys' deed, the description is as follows, viz. : "Beginning at the corner of a field at the junction of the Bloomingdale road with a cross-road that leads to Harlem, thence running along the Bloomingdale road south thirty-five degrees west seven chains fifty links ; thence south thirty-seven degrees west ten chains thirty-two links ; thence south fifty-four degrees east along William Constable's and Robert L. Bowne's land nineteen chains eighteen links ; thence north fifty-four degrees east nine chains fifty-five links ; thence south fifty-three degrees east three chains seventeen links ; thence north thirty-six degrees east eight chains ninety-two links ; thence north fifty-three degrees west twenty-six chains to the beginning, containing forty-two acres and five perches, according to a map made by Benjamin Taylor, one of the city surveyors of the city and county of New York, and hereto annexed, and also," etc.

Unquestionably, in the Vanderbilt deed the terms of the description are sufficiently explicit to exclude the roadbed from the grant. As to the Jaunceys' deed, what we have said in *Holloway* v. *Delano* (Action No. 1) applies here ; inasmuch as the starting point is similarly described.

For the reasons expressed in the case of this same plaintiff against Southmayd and others, the order appealed from should be affirmed and, under the stipulation, judgment absolute should be ordered against the appellant, with costs.

All concur, except EARL, FINCH and O'BRIEN, JJ., dissenting.

Order affirmed, and judgment accordingly.