JOHN A. STIRNWEIS, Appellant, *v.* CHARLES CACIOPPO, Respondent.

Second Department, January 9, 1931.

*Henry Rubin,* for the appellant.

*Lester C Ringe,* for the respondent.

KAPPER, J. The action is for specific performance of a contract for the sale and purchase of a parcel of real estate in Queens county. The contract was to convey a frontage of eighty-five feet running " along the Westerly side of Fresh Pond Road." The answer sets up a counterclaim in which it is alleged " that the premises in question have no street frontage on Fresh Pond Road," and demands judgment for the return of defendant vendee's deposit of $3,000 and the expenses incurred in examining the title.

Fresh Pond road appears to be an ancient road, dating from 1683. The evidence shows it to have been what is called "an English road" in which there is no title in abutters "to the bed of the street." A map made in 1781 "shows Fresh Pond Road." In 1872 a map was made of a large area with lots fronting on Fresh Pond road. This map is referred to in the record as the "Drube" map. The first deed in the record affecting this property was made on May 23, 1887, the grantor being Ann C. Morton. It described the property as intersecting "Fresh Pond Road as it is commonly called" with Nenninger avenue, and running along said "Fresh Pond Road." It also described the land as "known and distinguished on a certain map made by H. Drube, Civil Engineer and Surveyor, dated December, 1872." The next deed was that of a referee on judicial sale, made June 30, 1910, conveying lots, inclusive of the premises in question, according to the "Drube" map, and describing the property as running along "Fresh Pond Road as it is commonly called." The next and last deed in evidence, and which conveyed to the plaintiff a portion of the property in suit, also describes the land as shown on the "Drube" map and as running "along the westerly side of said Fresh Pond Road."

It appears that in 1911 the city of New York in condemnation proceedings established a new westerly line of Fresh Pond road which it located to the east of the westerly line of the former Fresh Pond road. At the northerly end of the property in suit this new Fresh Pond road westerly line is eight feet and two-tenths of an inch to the east of the northerly end of the plaintiff's premises and six feet six inches to the east of the southerly end thereof. It is with this strip between the old and new lines of the highway that the litigation is concerned, the defendant claiming that plaintiff is without title thereto and cannot, therefore, convey property abutting or fronting on Fresh Pond road as agreed in the contract of sale, and the plaintiff contending that the strip does not stand in the way of a frontage of his property on Fresh Pond road, the westerly line of which was changed by the condemnation proceeding. There is no dispute that the plaintiff's easterly boundary is the westerly line of a road that has existed for centuries. It further appears that in August, 1922, the city caused to be filed a map which the record characterizes as the "alteration map." By that map the city restored the westerly line of Fresh Pond road to the line which had always existed as the highway line down to the period of the above-mentioned condemnation proceeding. Defendant's witness Campbell, a surveyor, testified:

"Q. You say that the present line of Fresh Pond Road, as shown on this alteration map, No. 918, which is the final topo-

graphical map, coincides with the line of the Drube map? A. Right.

" The Court: More than that. Did it ·coincide with the line of the actual street?

" The Witness: It coincides with the line of the Drube map, as in use at that time.

" The Court: The street too?

" The Witness: It was for a long time, until it was eliminated by the City of New York. Then it became sidewalk.

" Q. Is the westerly line of the map, as now in force, the easterly boundary line of the plaintiff's property? A. The westerly boundary of the —

" Q. Of the street? A. Of the new street.

" Q. Yes; the easterly boundary line of the plaintiff's property? A. It is.

" Q. Is the new street as established on this alteration map, 918, physically opened? A. Physically opened?

" Q. Yes. A. It is.

" Q. It is in use and traveled? A. It's in use for pedestrian traffic only.

" Q. It is in use and traveled by the public? A. Right.

" Q. Up to the easterly boundary line of the plaintiff's property? A. Right."

The position of the defendant on the trial was made plain. Despite the proof that Fresh Pond road is an " English road " the defendant claimed (and now claims) that title to the bed of the road was in Ann C. Morton, as abutting owner, and that as the change made by the city in the creation of the new westerly line of Fresh Pond road shifted the easterly line of Ann Morton's land to the extent of the strip referred to, the private title to that strip by reason of the condemnation proceeding of 1911 is in Ann Morton, with which she has not parted, and that the plaintiff only owns up to the strip and not on and along the new line of Fresh Pond road. The learned trial justice was of the opinion that plaintiff was not the owner of the strip and that his contract was to convey to the highway, with which he cannot comply because his title runs only to the old highway line and does not include the strip intervening between that line and the changed line fixed by the city's condemnation.

This conception makes plaintiff's land an interior lot with no outlet to the public road or street, and I am of the opinion that the conclusion reached by the learned court below was incorrect. It is immaterial on the question of plaintiff's title whether title to the bed of old Fresh Pond road is in Ann C. Morton or in the public for highway purposes as its ancient character clearly indi-

cates. If the title to the strip reverted to Ann C. Morton, the strip was not released from the plaintiff's right of access to the new street line. Ann C. Morton might have, by the reversion, title to the fee of the strip, " but it is a naked, or barren, title." (*Reynolds* v. *Interborough R. T. Co.*, 206 N. Y. 587, 590.) Ann C. Morton sold land fronting on Fresh Pond road as anciently existing and as followed by the " Drube " map of 1872. She was in the same position with regard to her grant as were all owners of lots bought in accordance with that map. It is not even necessary in this case to apply the rule of easements by reason of the sale of lots on a map indicating a street and from which map all owners within the area are accorded an easement of way or right of passage. In this case we have, as repeatedly stated, a long-existing public road upon which fronted the land of the plaintiff and Ann C. Morton's land, under and through whom the plaintiff claims.

In *Holloway* v. *Southmayd* (139 N. Y. 390) the owner of land through which ran a public highway, the fee of the soil of which was in him, conveyed a portion of the land by a description beginning on the side of the highway, thence by various courses to the highway, and thence to the place of beginning. It was held that, while the fee of the soil of the road may not have been transferred by the deed, the grantor thereby impliedly warranted to the grantee that so much of the highway as bordered upon the premises granted should perpetually exist as an open way, and in legal effect granted such usual and necessary easements as would be comprehended in the free flow of light and air over the open way and in the free use thereof as such *pro tanto;* and that the easements so granted survived the extinguishment of the public easement by discontinuance of the highway by act of law. In this (*Holloway* case the case of *White' Bank of Buffalo* v. *Nichols* (64 N. Y. 65) is referred to as " instructive upon this proposition," GRAY, J., speaking of it (p. 402) in the following language: " That was in ejectment, to recover a strip of land which, by construction of a street under the direction of the public authorities, remained between the new and original street lines. The defendant was the owner of the abutting property and took possession up to the new street line, and the plaintiff, claiming as the owner of the soil of the street, sought to eject him. It was held that, by the original grant of the lot to defendant's predecessor in the title, its boundary was confined to the exterior line of the street; but that he had the right to an easement, of which he could not be deprived, and which consisted in the right to have the space of ground left open forever as a street, and to use the way for every purpose that may be usual and reasonable for the accommodation of the granted premi es.

The plaintiff's recovery, therefore, in the action, it will be seen, was a barren one; for, though it obtained a judgment that the fee was in it, the judgment subjected it to the defendant's easement. In that case, the original grant was of premises as shown upon a map of the block, made by the grantors, on which streets were designated, and, while that circumstance entered into the decision of the question of defendant's right to an easement, nevertheless, it was laid down by ALLEN, J., as the general rule, that ' when land is granted bounded on a street or highway, there is an implied covenant that there is such a way, that so far as the grantor is concerned it shall be continued, and that the grantee, his heirs and assigns, shall have the benefit of it.' "

The result of the decisions is that any reverter in Ann C. Morton is of such a barren, naked character that there could not be placed by her or any grantee of hers any barrier between the land of the plaintiff and the new easterly line of Fresh Pond road. In that aspect it is immaterial what the so-called " alteration map " filed in 1922 accomplished. Certainly if it restored the old city line of the Fresh Pond road, then the plaintiff's land abuts the public highway of that name and is susceptible of conveyance in exact accord with the contract. But leaving out of consideration this " alteration map," it seems to me that a reversion of the fee of the strip to any owner would not take from the plaintiff the right of free and open access to the new westerly line of Fresh Pond road as created by the condemnation proceedings of 1911. The title which the plaintiff can convey is for all practical legal purposes good and marketable, and there is no impediment between his frontage and the Fresh Pond road under either the condemnation line of 1911 or the line of the road fixed by the " alteration " map which, the evidence shows us, has caused a continuation of the public use of the strip as a highway.

The judgment should be reversed upon the law and the facts, with costs, and judgment directed for the plaintiff for specific performance as prayed for in the complaint, with costs.

LAZANSKY, P. J., YOUNG, CARSWELL and SCUDDER, JJ., concur.

Judgment reversed upon the law and the facts, with costs, and judgment directed for plaintiff for specific performance as prayed for in the complaint, with costs. Findings of fact and conclusions of law are reversed and new findings and appropriate conclusions will be made. Settle order on notice.